UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
                                                                   :
ONE-GO-EVENTS BENELUX BV,                                          :        Index No. 07-CV-8185 (PKL)
                                                                   :
                                        Plaintiff,                 :               ECF Case
                                                                   :
                        - against -                                :
                                                                   :
JAM EXHIBITIONS, LLC,                                              :
                                                                   :
                                        Defendant.                 :
                                                                   :
                                                                   :
----------------------------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JAM EXHIBITIONS, LLC'S MOTION TO DISMISS PLAINTIFF ONE-GO-EVENTS BENELUX BV'S COMPLAINT

DLA PIPER US LLP
Megan Shea Harwick
1251 Avenue of the Americas
New York, New York  10020
(212) 335-4500

- and -

William A. Rudnick
203 North LaSalle Street
Suite 1900
Chicago, IL  60601
(312) 368-4000

Attorneys for Jam Exhibitions, LLC

Dated:  November 26, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .................................................................................................... 3

I.    ONE-GO'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO
      FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM................ 3

    A.    One-Go Fails To Plead A Breach Of Contract Claim............................ 4

    B.    The Parties Never Entered Into An Enforceable Contract...................... 6

        1.    The Language of the Draft Agreement Evidences That The
            Parties Did Not Intend To Be Bound Until The Agreement
            Was Finalized And Executed............................................. 7

        2.    Jam Never Accepted Any Performance From One-Go ................. 8

        3.    The Parties Did Not Negotiate All The Material Terms................ 9

        4.    The Draft Agreement Is The Type Of Agreement That Is
            Usually In Writing ........................................................ 10

    C.    Even If The Alleged Agreement Was Enforceable, It Violates The
      Statute of Frauds ...................................................................... 11

    D.    One-Go's Unjust Enrichment Claim Must Be Dismissed Because It
      Is Also Barred By the Statute of Frauds ........................................ 13

II.   IN THE ALTERNATIVE, ONE-GO'S COMPLAINT SHOULD BE
      DISMISSED  PURSUANT TO FED. R. CIV. P. 12(b)(3) BECAUSE
      VENUE IS IMPROPER HERE .......................................................... 14

CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

**Page**

Advanced Marine Tech., Inc. v. Burnham Sec., Inc.,
16 F. Supp. 2d 375 (S.D.N.Y. 1998)..................................................................7

Ciaramella v. Reader's Digest Ass'n, Inc.,
131 F.3d 320 (2d Cir. 1997)...............................................................7, 8, 9

Computech Int'l, Inc. v. Compaq Computer Corp.,
No. 02 Civ. 2628, 2002 WL 31398933 (S.D.N.Y. Oct. 24, 2002) ....................11

Conley v. Gibson,
355 U.S. 41 (1957)...............................................................................3

Crowley v. Vision Maker, LLC,
No. 06 Civ. 9388, 2007 WL 2823130 (S.D.N.Y. Sept. 25, 2007)....................3, 6

Davidson Pipe Co. v. Laventhol and Horwath,
No. 84 Civ. 5192, 1986 WL 2201 (S.D.N.Y. Feb. 11, 1986) ................7, 8, 9, 10

ESLworldwide.com, Inc. v. Interland, Inc.,
No. 06 Civ. 2503, 2006 WL 1716881 (S.D.N.Y. June 21, 2006)................14, 15

Ellis v. Provident Life & Accident Ins. Co.,
3 F. Supp. 2d 399 (S.D.N.Y. 1998) ..............................................................13

Gessler-J.A. v. Sobieski Destylarnia S.A.,
No. 06 Civ. 6510, 2007 WL 1295671 (S.D.N.Y. May 3, 2007).......................15

Health & Cmty. Living Inc. v. Goldis Fin. Group, Inc.,
No. 96 CV 0459, 1998 WL 117928 (E.D.N.Y. Mar. 13, 1998) .........................7

Highlands Ins. Co. v. PRG Brokerage, Inc.,
No. 01 Civ. 2272, 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)...............................4

Huntington Dental & Med. Co., Inc. v. Minnesota Mining and Mfr. Co.,
No. 95 Civ. 10959, 1998 WL 60954 (S.D.N.Y. Feb. 13, 1998) .........................13

Innovative Networks, Inc. v. Young,
978 F. Supp. 167 (S.D.N.Y. 1997) ..............................................................12

## TABLE OF AUTHORITIES
(continued)

**Page**

Levy v. Bessemer Trust Co.,
    No. 97 Civ. 1785, 1997 WL 431079 (S.D.N.Y. July 30, 1997) ............................3

Lewis Tree Serv. Inc., v. Lucent Tech., Inc.,
    No. 99 Civ. 8556, 2000 WL 1277303 (S.D.N.Y. Sept. 8, 2000) ........................4

Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.,
    No. 03 Civ. 5262, 2004 WL 421793 (S.D.N.Y. Mar. 5, 2004) ...................14, 15

Miller v. Tawil,
    165 F. Supp. 2d 487 (S.D.N.Y. 2001)..................................................................7

Orange Co. Choppers, Inc. v. Olaes Enter., Inc.,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)................................................................4

P.A. Bergner & Co. v. Martinez,
    823 F. Supp. 151 (S.D.N.Y. 1993) ...............................................................8, 10

Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A.,
    493 F. Supp. 626 (S.D.N.Y. 1980) ..............................................................14, 15

R.G. Group, Inc. v. Horn & Hardart Co.,
    751 F.2d 69 (2d Cir. 1984)...................................................................6, 7, 8, 9, 10

Ross v. FSG Privatair, Inc.,
    No. 03 Civ. 7292, 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) ........................4

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000)..................................................................................3

SD Prot., Inc. v. Del Rio,
    498 F. Supp.2d 576 (E.D.N.Y. 2007) ...............................................................12

Sobek v. Quattrochi,
    No. 03 Civ. 10219, 2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004).........................4

Spencer Trask Software and Info. Serv. LLC v. RPost Int'l,
    383 F. Supp. 2d 428 (S.D.N.Y. 2003).................................................................8

Strategic Mktg. & Commc'n., Inc. v. Kmart Corp.,
    41 F. Supp. 2d 268 (S.D.N.Y. 1998)................................................................14

The Diversified Group, Inc. v. Daugerdas,
    139 F. Supp. 2d 445 (S.D.N.Y. 2001).........................................................12, 13

## TABLE OF AUTHORITIES
### (continued)

**Page**

Winston v. Mediafare Enter. Corp.,
    777 F.2d 78 (2d Cir. 1985)......................................................................6, 9, 10

Wolff v. Rare Medium, Inc.,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002).........................................................4, 5

Zaro Licensing, Inc. v. Cinmar, Inc.,
    779 F. Supp. 276 (S.D.N.Y. 1991) ..............................................................4

Zurich Ins. Co. v. Prime Inc.,
    419 F. Supp. 2d 384 (S.D.N.Y. 2005)...........................................................14

## STATUTES

Fed. R. Civ. P. 12(b)(3)..................................................................................1, 14

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 3

N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2003)................................................11

Defendant Jam Exhibitions, LLC ("Jam"), by its attorneys, respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff One-Go-Events Benelux BV's ("One-Go") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted or, in the alternative, pursuant to Rule 12(b)(3) for improper venue.

## PRELIMINARY STATEMENT

One-Go's claims against Jam are predicated on an alleged agreement it entered into with Jam to promote and present a certain Bodies Exhibit in Saint Petersburg, Russia (the "Saint Petersburg Exhibit"). In particular, One-Go alleges that due to certain delays, the Saint Petersburg Exhibit could not open as scheduled and thereafter, Jam informed One-Go that it would not be providing the Bodies Exhibit to One-Go in breach of the supposed agreement between the parties. (See Affirmation of Megan Shea Harwick, dated November 26, 2007 ("Shea Aff."), Exh. A (Complaint) at ¶¶ 15-17.) On September 19, 2007, One-Go filed this action asserting breach of contract and unjust enrichment claims against Jam. Jam submits this memorandum of law in support of its motion to dismiss One-Go's Complaint for failure to state a claim upon which relief can be granted, or in the alternative, for improper venue.

One-Go cannot maintain this action against Jam for several reasons. First, One-Go's breach of contract allegations fail to set forth any of the specific terms of the purported agreement between One-Go and Jam, including the basis for Jam's alleged liability under such agreement. For this threshold reason, One-Go's complaint fails to state a cause of action for breach of contract against Jam.

Second, while One-Go references an agreement between the parties to promote and present the Saint Petersburg Exhibit, the parties never entered into an enforceable contract. To the contrary, although the parties began the process of drafting some of the terms of a potential

agreement, they never agreed on several material terms and never executed a final agreement (the "Draft Agreement"). (See Affidavit of Amy Granat, sworn to on November 25, 2007 ("Granat Aff."), Exh. A (Draft Agreement).) Moreover, as the language of the Draft Agreement makes plain, the parties did not intend to be bound prior to execution of a final contract.

Third, even if the Draft Agreement was enforceable (which it is not), it violates the statute of frauds because, by its terms, the agreement is not capable of being performed within one year. Fourth, One-Go's unjust enrichment claim fails because that claim is predicated on the Draft Agreement and it too is barred by the statute of frauds.

Finally, even if the Draft Agreement was an enforceable contract (which for the reasons stated above, it is not), One-Go's complaint would still fail because New York is not the proper venue for One-Go's claims against Jam. Indeed, the Draft Agreement contains a forum selection clause which designates the Hague, Netherlands, as the exclusive forum for any claims arising out of the agreement. Further, One-Go's allegations demonstrate that this action has no connection to New York. One-Go alleges that it is a Netherlands corporation principally located in the Netherlands, that Jam is a Delaware LLC principally located in Chicago, Illinois and that the alleged agreement was to be performed by One-Go in the Netherlands and in Saint Petersburg, Russia. (Shea Aff., Exh. A at ¶¶ 1-2, 5, 9.) In sum, even if One-Go could state a cause of action for breach of contract, New York is not the proper venue for such claim and therefore, One-Go's Complaint against Jam must be dismissed for this reason as well.

2

<u>ARGUMENT</u>

I.

## ONE-GO'S COMPLAINT SHOULD BE DISMISSED
## PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM

On a motion to dismiss for failure to state a claim, dismissal is appropriate where it is apparent that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see</u> Fed. R. Civ. P. 12(b)(6). Although a court must assume the allegations of the complaint to be true and draw all reasonable inferences in the plaintiff's favor, a court is not required to accept a plaintiff's conclusory allegations or legal conclusions, and a complaint consisting entirely of those allegations fails to state a claim. <u>Crowley v. Vision Maker, LLC</u>, No. 06 Civ. 9388, 2007 WL 2823130, *5 (S.D.N.Y. Sept. 25, 2007) ("[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader .... [i]f it fails to do so, a motion under Rule 12(b)(6) will be granted") (citations omitted). As well, a complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory. <u>Levy v. Bessemer Trust Co.</u>, No. 97 Civ. 1785, 1997 WL 431079, *2 (S.D.N.Y. July 30, 1997).

For the purposes of a motion to dismiss, a complaint is deemed to include any written document attached as an exhibit, any statements or documents incorporated in the complaint by reference and any documents that the plaintiff may have relied on in bringing the action. <u>See</u> <u>Rothman v. Gregor</u>, 220 F.3d 81, 88-89 (2d Cir. 2000). To the extent that any allegations in the complaint are inconsistent with evidence contained in the documents incorporated, referenced or

relied upon, "the documents control, and the allegations need not be accepted as true." <u>Sobek v.</u>
<u>Quattrochi</u>, No. 03 Civ. 10219, 2004 WL 2809989, *2 (S.D.N.Y. Dec. 8, 2004).

A.    <u>One-Go Fails To Plead A Breach Of Contract Claim</u>

One-Go's breach of contract claim against Jam must be dismissed because One-Go fails
to allege any of the material terms of the parties' supposed agreement or, importantly, what
provision of such agreement One-Go contends Jam's liability is based on. Even under the
Federal Rule's liberal pleading requirements, One-Go's allegations are inadequate.

To plead a claim for breach of contract, a plaintiff must allege the terms of the contract,
the specific provisions that were breached and the damages incurred. <u>Zaro Licensing, Inc. v.</u>
<u>Cinmar, inc.</u>, 779 F. Supp. 276, 286 (S.D.N.Y. 1991). Failure to plead these threshold elements
will result in dismissal. <u>See</u> <u>Highlands Ins. Co. v. PRG Brokerage, Inc.</u>, No. 01 Civ. 2272, 2004
WL 35439, *8 (S.D.N.Y. Jan. 6, 2004) (a complaint will be dismissed unless plaintiff alleges in
"nonconclusory fashion 'the essential terms of the purported contract, including the specific
provisions of the contract upon which liability is predicated'") (citation omitted); <u>see</u> <u>also</u>
<u>Orange Co. Choppers, Inc. v. Olaes Enter., Inc.</u>, 497 F. Supp. 2d 541, 554 (S.D.N.Y. 2007)
(dismissing contract claim because plaintiff failed to allege the specific provision of the parties'
agreement that defendant allegedly breached); <u>Ross v. FSG Privatair, Inc.</u>, No. 03 Civ. 7292,
2004 WL 1837366, *5 (S.D.N.Y. Aug. 17, 2004) (same); <u>Wolff v. Rare Medium, Inc.</u>, 210 F.
Supp. 2d 490, 496 (S.D.N.Y. 2002) (same); <u>Lewis Tree Serv. Inc., v. Lucent Tech., Inc.</u>, No. 99
Civ. 8556, 2000 WL 1277303, *5 (S.D.N.Y. Sept. 8, 2000) (same).

In <u>Wolff</u>, the plaintiff alleged that it entered into a merger agreement with the defendant
and that under such agreement, the plaintiff was entitled to enter into a certain transaction with a
third party bank. 210 F. Supp. 2d 495-96. The plaintiff further alleged that the defendant
breached the merger agreement by informing the third party bank that the proposed transaction

4

was not permitted under the merger agreement. See id. The Wolff court dismissed the contract

claim on the grounds that the plaintiff failed to plead any facts in the complaint to support the

existence of an obligation on behalf of the defendant to provide third parties with a particular

opinion. See id.

So too here. While One-Go alleges some general information about a supposed

agreement it entered into with Jam, One-Go fails to allege facts to support its claim that Jam

somehow breached that agreement. In particular, One-Go alleges that:

- It entered into an agreement with Jam to promote and present the "Saint Petersburg Exhibit." (Shea Aff., Exh. A at ¶5.)

- Pursuant to that alleged agreement, One-Go was required to pay Jam $100,000, make all local arrangements for the exhibition and incur one-fifth of the startup costs and expenses. (Id. at ¶¶8-10.)

- In return for One-Go's services, Jam was required to pay One-Go one-fifth of the profits. (Id. at ¶ 12.)

- Due to problems preparing the exhibit and in clearing customs, the Saint Petersburg Exhibit could not open at the time provided in the agreement. (Id. at ¶ 15.)

- Jam informed One-Go that the exhibition would not open and that Jam would not be providing the Bodies Exhibit to One-Go. (Id. at ¶ 16.)

One-Go then concludes that:

- Jam's "failure to perform its responsibilities under the Agreement constituted a material breach of the agreement." (Id. at ¶17.)

Absent from One-Go's allegations is any reference to the specific provisions of the

supposed agreement between the parties. Indeed, it is impossible to glean from One-Go's

allegations what Jam's obligations were and the particular contractual provision(s) that Jam

allegedly breached. Because the Court is not required to accept such vague allegations, One-

Go's breach of contract claim must be dismissed.

B.      The Parties Never Entered Into An Enforceable Contract

Even if One-Go properly pled a breach of contract claim against Jam (which it has not), that claim still fails because it is predicated on an unenforceable agreement. Tellingly, One-Go does not attach a copy of the alleged agreement to its Complaint, nor does it refer to a single provision therein. As demonstrated by the Draft Agreement, the parties never got beyond the drafting stage of a proposed agreement and there were still material terms left to negotiate. (Granat Aff. at ¶¶ 3-5, Exh. A.) Because the parties never intended to be bound prior to execution, the Draft Agreement is not enforceable and One-Go's breach of contract claim must be dismissed.

To prevail on a claim for breach of contract, a plaintiff must establish the existence of an enforceable contract at the time of the alleged breach. Crowley, 2007 WL 2823130, at *5. Although parties may enter into a contract orally with the idea that their agreement will be memorialized later in writing, if either party communicates an intent not to be bound until the agreement is finalized and executed, "no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." Winston v. Mediafare Enter. Corp., 777 F.2d 78, 80 (2d Cir. 1985); see R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984) ("if the parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs"). It is the parties' intent that will determine when a contract was formed. See id. To that end, the Second Circuit has articulated four factors to guide a court's determination of whether the parties intended to be bound in the absence of an executed contract. See id. Those factors are: (1) whether the parties expressly reserved their rights not to be bound without a formal written contract; (2) whether a party partially performed under the contract and such performance was accepted by the other party; (3) whether the parties

6

agreed upon all the terms of the contract; and, (4) whether the alleged agreement is the type of contract that is usually committed to writing. See id.

Courts will dismiss a breach of contract complaint where the balance of these factors weigh against finding an intent to be bound prior to execution of a formal agreement. See Miller v. Tawil, 165 F. Supp. 2d 487, 491-93 (S.D.N.Y. 2001); Advanced Marine Tech., Inc. v. Burnham Sec., Inc., 16 F. Supp. 2d 375, 380-381 (S.D.N.Y. 1998); Health & Cmty. Living Inc. v. Goldis Fin. Group, Inc., No. 96 CV 0459, 1998 WL 117928, *4 (E.D.N.Y. Mar. 13, 1998).

Application of these factors to the facts of this case leads to only one conclusion - - the parties did not intend for the Draft Agreement to constitute an enforceable contract.

       1.     The Language of the Draft Agreement Evidences That The Parties Did Not Intend To Be Bound Until The Agreement Was Finalized And Executed

The first factor, whether the parties reserved their rights not to be bound until formal execution, requires a review of the language of the subject agreement. R.G. Group, 751 F.2d at 75. Language evidencing an intent not to be bound is afforded "considerable weight," as courts try to avoid frustrating the expressed intentions of the parties. Id.; Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 324 (2d Cir. 1997).

The wording of the Draft Agreement here reflects an intent not to be bound until a written contract was duly executed. For example, One-Go's payment obligation is triggered "[u]pon execution of this Agreement." (Granat Aff., Exh. A at Article 3.) The Draft Agreement also contains blank signature lines with language that states: "the parties hereto have executed this Agreement as of the day and year first written above." (Id. at p. 8.) These provisions place significance upon execution and reflect a mutual intent by the parties not to be bound until such time. See Davidson Pipe Co. v. Laventhol and Horwath, No. 84 Civ. 5192, 1986 WL 2201, *4 (S.D.N.Y. Feb. 11, 1986) (provision requiring payment to be made upon execution "may be

viewed as [an] impediment to forming a binding agreement prior to some formal time of execution"); Spencer Trask Software and Info. Serv. LLC v. RPost Int'l, 383 F. Supp. 2d 428, 442 (S.D.N.Y. 2003) (provision requiring payment on execution and blank signature lines with open agreement date evidence parties' intent not to be bound prior to formal execution).

As well, the Draft Agreement contains a merger clause providing that "[t]his Agreement contains the entire understanding between the parties and supersedes all prior written and oral agreements between them. . . . This agreement may not be amended or modified except by written instrument executed by both JAM and One-Go-Events." (Granat Aff., Exh. A at Article 23.) A merger clause, like the one here, "is persuasive evidence that the parties did not intend to be bound prior to execution of a written agreement." Ciaramella, 131 F.3d at 324; see Davidson, 1986 WL 2201, at *5.

In sum, the language of the Draft Agreement demonstrates that the parties did not intend to be bound prior to execution and thus weighs against finding an enforceable contract between the parties.

### 2.    Jam Never Accepted Any Performance From One-Go

The second factor for consideration is whether one party has partially performed under the alleged agreement and such performance has been accepted by the other party. See R.G. Group, 751 F.2d at 75. The performance must be such that something of value is conferred on the defendant and is accepted by the defendant. See Spencer Trask, 383 F. Supp. 2d at 443; see also P.A. Bergner & Co. v. Martinez, 823 F. Supp. 151, 157 (S.D.N.Y. 1993) (test for partial performance is the same as for unjust enrichment).

Here, One-Go summarily alleges that it performed all its obligations under the alleged agreement, but it fails to allege that Jam accepted any such performance. In addition, the Draft Agreement provides that One-Go's performance of its obligations was subject to Jam's direction

8

and approval. (Granat Aff., Exh. A, Article 4.) One-Go does not allege that it ever obtained Jam's direction and/or approval before it began its alleged performance. As One-Go has not alleged that Jam accepted its alleged performance, much less that Jam directed and approved of same, this factor weighs against finding an intent to bound.

3.    The Parties Did Not Negotiate All The Material Terms

The third factor is whether the parties negotiated all the material terms of the purported agreement. The standard is whether there was "literally nothing left to negotiate or settle," and therefore, the existence of open terms evidences an intent not to be bound. R.G. Group., 751 F.2d at 76 (that parties to franchise agreement failed to negotiate franchise territory evidences that they did not intend to be bound); see Ciaramella, 131 F.3d at 325 (parties had not reached agreement on all the terms of the purported agreement indicating an intent not to be bound); Davidson, 1986 WL 2201, at *6 (same); Winston, 777 F.2d at 82-83 (drafting process revealed several points of disagreement).

In this case, the Draft Agreement does not include all the material terms of the proposed agreement between One-Go and Jam. To the contrary, the Draft Agreement makes repeated reference to a "business plan and budget" that the parties were supposed to comply with, however, the terms of the "business plan and budget" are not included in the Draft Agreement. (Granat Aff., Exh. A, Schedule A.) The Draft Agreement refers to the "business plan and budget" in the following provisions:

- Article 4(b): One-Go will "use commercially reasonable efforts to ensure that all installation requirements of the St. Petersburg Exhibition will be completed sufficiently in advance of the opening of the St. Petersburg Exhibition *in accordance with the business plan and budget attached hereto as Schedule A;*

- Article 4(d): One-Go will "develop and implement a comprehensive admission and sales program . . . *in accordance with the business plan and budget attached hereto as Schedule A.*"

- Article 6: "The profits and losses will be allocated *in accordance with the business plan and budget attached hereto as <u>Schedule A</u>.*"

- Article 6(a): One-Go "is entitled to one-fifth (1/5) of the JAM share [of profits] as *illustrated in the PSO Tab of the attached business plan, <u>Schedule A</u>.*"

- Article 8: One-Go "shall operate the Saint Petersburg Exhibition, including, but not limited to, setting up staffing, salaries, advertising and production. One-Go-Events will fund all local operating expenses (e.g. staffing, salaries, etc.) and will submit the necessary supporting detail to JAM for periodic reimbursement. *One-Go-Events must get prior approval of Jam for any variance outside the business plan and budget attached hereto as <u>Schedule A</u>.*"

- Article 8(b): "Jam and One-Go Events acknowledge that the installation of the Saint Petersburg Exhibition is done by Premier, *all in accordance with the business plan and budget attached hereto as <u>Schedule A</u>.*"

(<u>Id.</u>) (emphasis added).

　　　The fact that the "business plan and budget" was not included in the Draft Agreement is strong evidence that the Draft Agreement was not complete, did not contain all the material terms and that the parties did not intend to be bound by its terms prior to final agreement and execution.

　　　4.　　The Draft Agreement Is The Type Of Agreement
　　　　　　That Is Usually In Writing

　　　The fourth factor is whether it is customary for the agreement at issue to be in writing. See <u>R.G. Group</u>, 751 F.2d at 76. "In the absence of custom, courts will assume that a transaction of sufficient substance or complexity will usually require a writing." <u>P.A. Bergner</u>, 823 F. Supp. at 158; <u>Winston</u>, 777 F.2d at 83 ("the $62,500 at issue is not a trifling amount, and payment was to be made over several years"). The complexity of an agreement can be demonstrated where the contract goes through multiple drafts because the drafting process "reinforce[s]" the parties' intent not to be bound until the writing is finalized and executed and it "reflect[s] a practical business need to record all of the parties' commitments in definitive documents." <u>Davidson</u>, 1986 WL 2201, at *8 (internal quotations omitted).

Here, the parties went through the effort of putting the preliminary terms of an agreement into draft form, thus evidencing their intent not to be bound until the writing was finalized and executed. In addition, the Draft Agreement calls for One-Go to pay $100,000 upon execution and contains complex profit and loss formulas to be calculated pursuant to a yet un-drafted business plan and budget. (Granat Aff., Exh. A at Articles 3, 6, 6a.) Thus, the Draft Agreement was sufficiently complex to require a writing.

In sum, all four factors lead to the conclusion that the parties did not intend to be bound unless and until a formal agreement was reached and executed. Because the Draft Agreement was never finalized and executed, it is unenforceable and accordingly, One-Go's contract claim must be dismissed.

C.    Even If The Alleged Agreement Was
       Enforceable, It Violates The Statute of Frauds

Even if One-Go plead the essential terms and conditions of the alleged agreement with Jam and, even if the parties evidenced an intent to be bound prior to execution of a final agreement, One-Go's contract claim still would not survive dismissal because the Draft Agreement violates the statute of frauds.

The statute of frauds is aimed to prevent fraud in proving certain legal transactions that are particularly susceptible to fraud or deception and to ensure the existence of a valid agreement between the parties. See Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2002 WL 31398933, *3 (S.D.N.Y. Oct. 24, 2002). Under the statute of frauds, an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing and signed by the party to be charged. N.Y. Gen. Oblig. Law § 5-701(a)(1) (McKinney 2003). In assessing whether a contract is capable of being performed within one year of creation, the term of the contract must be considered as well as whether the contract contains a non-compete

11

provision for some period of time after the contract terminates. See The Diversified Group, Inc. v. Daugerdas, 139 F. Supp. 2d 445, 459 (S.D.N.Y. 2001) ("oral contracts containing restrictive covenants not capable of being performed within one year fall under [section 5-701(a)(1) of the statute of frauds]"). To that end, an agreement cannot be performed within one year where the term of the agreement in addition to the term of the non-compete provision is longer than one year. See Innovative Networks, Inc. v. Young, 978 F. Supp. 167, 180 (S.D.N.Y. 1997) (oral renewal of employment contract violated the statute of frauds because the term of employment was for six months and the non-compete obligation was to last for one year after termination); SD Prot., Inc. v. Del Rio, 498 F. Supp.2d 576, 584 (E.D.N.Y. 2007) (unsigned contract violated the statute of frauds where the employment was for one year and the non-compete obligation was for five years).

In this case, One-Go alleges that it entered into an alleged agreement with Jam "in or about March 2007" and that the Saint Petersburg Exhibition was to open on May 26, 2007 and close on October 24, 2007. (Shea Aff., Exh. A at ¶¶5-6.) Based on One-Go's allegations, the term of the alleged agreement was seven months. The Draft Agreement, however, contains a non-compete clause providing that "for a period of one (1) year after the conclusion of the Saint Petersburg Exhibition," One-Go will not engage in activities related to the presentation of a similar exhibition. (Granat Aff., Exh. A at Article 13.) Because the Saint Petersburg Exhibition was supposedly to begin and conclude within seven months of the creation of the alleged agreement and the non-compete would span one-year from then, the Draft Agreement is not capable of being performed within one-year and is thus barred by the statute of frauds. For this additional reason, One-Go's contract claim must be dismissed.

12

D.    One-Go's Unjust Enrichment Claim Must Be Dismissed Because
      It Is Barred By the Statute of Frauds

One-Go's claim against Jam for unjust enrichment also must be dismissed because that claim is barred by the statute of frauds.

To state a claim for unjust enrichment, a plaintiff must plead: (1) that the defendant has received a benefit; (2) at the plaintiff's expense; and, (3) that equity requires restitution. See Diversified Group, 139 F. Supp.2d at 460. There is no need to analyze these elements where, as here, the unjust enrichment claim is predicated on the same agreement that violates the statute of frauds. See id. (dismissing unjust enrichment claim based on unenforceable oral contract). In short, a plaintiff may not end-run the statute of frauds by claiming unjust enrichment. See Huntington Dental & Med. Co., Inc. v. Minnesota Mining and Mfr. Co., No. 95 Civ. 10959, 1998 WL 60954, *7 (S.D.N.Y. Feb. 13, 1998) ("the law prevents a plaintiff from circumventing the reach of the statute of frauds by asserting a quasi-contract claim, such as quantum meruit or unjust enrichment"); Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 399, 412 (S.D.N.Y. 1998) (dismissing unjust enrichment claim); Diversified Group, 139 F. Supp. 2d at 460 (dismissing unjust enrichment claim).

Here, for its unjust enrichment claim, One-Go alleges that "Jam's knowing acceptance" of some un-defined "goods and services and/or allocation of resources and personnel provided by [One-Go]" coupled with Jam's alleged failure to perform under the alleged agreement and to pay amounts due to One-Go resulted in Jam being unjustly enriched. (Shea Aff., Exh. A at ¶ 26.) It is clear that One-Go's unjust enrichment claim is predicated on the alleged agreement between the parties and, as stated above, that agreement violates the statute of frauds. Accordingly, One-Go's unjust enrichment claim must be dismissed.

13

II.

## IN THE ALTERNATIVE, ONE-GO'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(3) BECAUSE VENUE IS IMPROPER HERE

Even if the alleged agreement between One-Go and Jam was an enforceable contract, (which it is not), that agreement contains a forum selection clause mandating that all disputes arising out of the agreement be resolved exclusively in the Hague, Netherlands. Accordingly, One-Go's complaint should be dismissed pursuant Fed. R. Civ. P. 12(b)(3) because venue is improper here.

A forum selection clause is presumed to be valid and enforceable. ESLworldwide.com, Inc. v. Interland, Inc., No. 06 Civ. 2503, 2006 WL 1716881, *2 (S.D.N.Y. June 21, 2006); Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co., No. 03 Civ. 5262, 2004 WL 421793, *3 (S.D.N.Y. Mar. 5, 2004). Indeed, the Second Circuit has developed a policy of honoring forum selection clauses to acknowledge the fact that these clauses are bargained-for terms of a contract. See id; Strategic Mktg. & Commc'n., Inc. v. Kmart Corp., 41 F. Supp. 2d 268, 270 (S.D.N.Y. 1998); Zurich Ins. Co. v. Prime Inc., 419 F. Supp. 2d 384, 387 (S.D.N.Y. 2005). A party seeking to avoid enforcement of a forum selection clause "bear[s] the heavy burden of making a 'strong showing' in order to over come the presumption of validity from which these clauses benefit." Mercury West, 2004 WL 421793, at *3. This "heavy burden" is met only when the court is convinced that recognition of the chosen forum would be unjust or unreasonable such as where enforcement would "deprive the complaining party of its day in court due to grave inconvenience or unfairness of the selected forum or if the clause contravenes a strong public policy of the forum state." Id.; Paterson, Zochonis (U.K.) Ltd. v. Compania United Arrows, S.A., 493 F. Supp. 626, 630 (S.D.N.Y. 1980). Absent such a showing, the complaint will be dismissed for improper venue. See Zurich, 419 F. Supp. 2d at 387 (dismissing complaint pursuant to Fed. R.

14

Civ. P. 12(b)(3) based on forum selection clause); Mercury, 2004 WL 421793, at *3 (same);

Gessler-J.A. v. Sobieski Destylarnia S.A., No. 06 Civ. 6510, 2007 WL 1295671, *2 (S.D.N.Y.

May 3, 2007) (same); ESLworldwide.com, 2006 WL 1716881, at *2 (same); Paterson, 493 F.

Supp. at 630 (same).

     Here, One-Go failed to even mention the forum selection clause contained in the Draft

Agreement, much less provide any basis for the Court to disregard it. In fact, One-Go's

allegations reveal that this case has no connection to New York. One-Go alleges that it is a

Netherlands corporation with its principle place of business in the Netherlands, that Jam is

limited liability company organized under the laws of Delaware and operating out of Chicago,

Illinois, and that One-Go's performance would occur in the Netherlands and Saint Petersburg,

Russia. (Shea Aff., Exh. A at ¶¶ 1, 2 5, 9.) Moreover, One-Go, a resident of the Netherlands,

would be hard pressed to assert that the Netherlands is so much more inconvenient than New

York such that it would be deprived of its day in court if forced to litigate there. To the contrary,

the Netherlands is closer to the alleged events in this dispute than New York. Accordingly, in

the event the Court finds the Draft Agreement to be an enforceable contract, One-Go's complaint

should still be dismissed because One-Go failed to meet its "heavy burden" of establishing that

the Court should disregard the forum selection clause contained in the Draft Agreement.

Accordingly, venue in New York is improper.

CONCLUSION

     For the foregoing reasons, Jam respectfully requests that the Court dismiss One-Go's

Complaint with prejudice and grant such other and further relief as the Court may deem just and

proper.

15

Dated: New York, New York
      November 26, 2007

DLA PIPER US LLP

By: _____
     Megan Shea Harwick

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

- and -

William A. Rudnick
230 North LaSalle Street
Suite 1900
Chicago, IL 60601
(312) 368-4000

Attorneys for Jam Exhibitions, LLC

16