# EXHIBIT F

## Jon Werner

**From:** Paul Koster [paul@one-go-events.ru]
**Sent:** Thursday, November 29, 2007 8:22 AM
**To:** Ton Jumelet
**Subject:** FW: ST Petersburg Russia JAM-ONE-GO Bodies Revealed-DRAFT-Agreement
**Attachments:** co-promotionagreement(JAMandOne-Go-EventsBeneluxBV).DOC

**From:** <Pacozimm@aol.com>
**Date:** Sat, 31 Mar 2007 07:16:23 EDT
**To:** <paul@one-go-events.ru>
**Cc:** <Joncmartin@aol.com>
**Subject:** ST Petersburg Russia JAM-ONE-GO Bodies Revealed-DRAFT-Agreement

Dear Paul

As discussed please find draft copy of our agreement for BODIES Revealed in ST Petersburg, Russia.

There is a question about jurisdiction. The document suggests Russian Law, when Dutch Law would probably be more appropriate since the deal is with the BV company.

We look forward to working with you on this exciting project

Best Regards
P

---

See what's free at AOL.com <http://www.aol.com?ncid=AOLAOF00020000000503> .

CO-PROMOTER AGREEMENT

THIS CO-PROMOTER AGREEMENT (this "Agreement"), made as of this ____ day of _____, 2007, by and between JAM Exhibitions, LLC, a Delaware limited liability company, having its principal place of business at 207 West Goethe, Chicago, Illinois 60610 ("JAM"), and One-Go-Events Benelux BV, a Netherlands corporation, having its principal place of business at Singel 92, 3112 GS Schiedam, The Netherlands ("ONE-GO-EVENTS").

WHEREAS, JAM, through a joint venture with an affiliate of Concert Production International ("CPI"), is currently presenting and promoting tour exhibits throughout the world of professional, high quality human anatomy, containing plastinated/polymer preserved human anatomical bodies or organs (the "Exhibition");

WHEREAS, ONE-GO-EVENTS is a promotion company located in the Netherlands, which is experienced in the organization and logistical aspects of publicly accessible events, such as cultural exhibitions; and

WHEREAS, the parties wish to work together to promote and present an Exhibition in Saint Petersburg, Russia (the "Saint Petersburg Exhibition"), upon the terms and conditions contained in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, the parties hereto agree as follows:

1.     Purpose.  The Saint Petersburg Exhibition shall be used for the public and private presentation of plastinated/polymer preserved human anatomical bodies or organs ("Specimens") for viewing and/or education with the intention of selling admission tickets and/or for the purposes of creating other revenue generating activities to generate a profit and shall include any or all Specimens, promotional activities, advertising, and operations associated with the Saint Petersburg Exhibitions.

2.     Term of the Saint Petersburg Exhibition; Term of this Agreement.  The Saint Petersburg Exhibition will open on May 26th, 2007 and shall run until October 24th, 2007. Set up for the exhibition will commence on the premises on or around _____ __$^{th}$, 2007.  Once the Saint Petersburg Exhibition closes, this Agreement shall terminate and will be deemed null and void and of no further force or effect, except that Sections 9, 11, 12, 13, 14 and 22 shall survive any termination of this Agreement.

3.     Payment.  Upon execution of this Agreement, ONE-GO-EVENTS shall pay to JAM, by wire transfer $100,000.00, which represents an amount equal to one-fifth (1/5) of the $500,000.00 guaranteed payment owed by JAM for presentment of the Saint Petersburg Exhibition.

4.     Obligations of ONE-GO-EVENTS.  ONE-GO-EVENTS shall, under the direction and subject to the approval of JAM, engage in all of the following activities:

(a)  make all local arrangements, and obtain all rights, permits and licenses as may be required, for the presentation of the Saint Petersburg Exhibition;

(b) use commercially reasonable efforts to ensure that all installation requirements of the Saint Petersburg Exhibition will be completed sufficiently in advance of the opening of the Saint Petersburg Exhibition in accordance with the business plan and budget attached hereto as Schedule A;

(c)  run the day-to-day operations in connection with the Saint Petersburg Exhibition;

(d) develop and implement a comprehensive admission and sales program, including ticket sales, telephone sales, media and sales blitzes, box office, group sales, and other means to maximize attendance at the Saint Petersburg Exhibition in accordance with the business plan and budget attached hereto as Schedule A;

(e) immediately notify in writing JAM of any damage, theft, or loss to the Saint Petersburg Exhibition or the Specimens, or in case of any event which threatens or is likely to threaten the safety and security of the Specimens;

(f)  not allow any food or beverage to be allowed in the Saint Petersburg Exhibition at any time either during normal business hours or special events;

(g) upon reasonable request from JAM, arrange to meet with representatives of JAM to review the budget and the progress and preparation of the Saint Petersburg Exhibition;

(f) take care of reporting in accordance with the following:

(i) daily summary sheets (weekend reports to be delivered on each Monday) are to be produced stating unit sales, gross revenue by type and price level. (sample reports to be provided);

(ii) amounts reported will be reconcilable to Deposits whether Cash or by type of Credit Card by date. All fees, if any, associated with Credit Cards are to be reported separately;

(iii) any cash balances/floats held at the venue to fund expenditures will be reconcilable to Deposits and Disbursements;

(iv) all Disbursements will have original documentation supporting expense reporting. Sales Receipts will be used for expenses; and

(v) additional reporting will be developed as required.

5. Revenue/Operating Costs/Funding.  Any and all revenues received by or paid to ONE-GO-EVENTS in connection with the Saint Petersburg Exhibition shall be deemed revenues pursuant to this Agreement. Any and all revenues received by or paid to ONE-GO-EVENTS,

CHGO1\30917730.2                      2

including but not limited to revenue derived from fees, commissions, ticket services charges, rebates, or sponsorships from concessionaires, sponsors, parking services, food services, or clothing sales at the Saint Petersburg Exhibition shall be deemed revenues pursuant to this Agreement.  ONE-GO-EVENTS shall be responsible for (i) one-fifth (1/5) of all of the operating costs of the Saint Petersburg Exhibition and (ii) one-fifth (1/5) of the cash required to start up the Saint Petersburg Exhibition.

6. <u>Profits/Losses</u>.  The profits and losses will be allocated in accordance with the business plan and budget attached hereto as <u>Schedule A</u> and any cash flow shall be distributed as follows: cash distributions to ONE-GO-EVENTS will be paid within the same reporting period that payments are made to Premier Exhibitions, Inc. ("<u>Premier</u>"), the licensor.  Cash will be distributed from surplus cash flow and may not, during the course of the term, be the same as profits earned. Cash calls may be made to cover operating losses at any time.  JAM is entitled to four-fifths (4/5) of the profits from the Saint Petersburg Exhibition and JAM is liable for four-fifths (4/5) of the losses of the Saint Petersburg Exhibition.  ONE-GO-EVENTS is entitled to one-fifth (1/5) of the profits from the Saint Petersburg Exhibition and ONE-GO-EVENTS is liable for one-fifth (1/5) of the losses of the Saint Petersburg Exhibition.

    a. <u>Profit Formula</u>.  JAM acknowledges the following formula: First, net profit up to and including an amount equal to the aggregate of all local costs plus the guarantee payment due to Premier are shared 50% by Premier and 50% by JAM (i.e., the "50:50 split point"), and thereafter, all additional net profits shall be shared 70% by Premier and 30% by JAM.  ONE-GO-EVENTS is entitled to one-fifth (1/5) of the JAM share as illustrated in the PSO Tab of the attached business plan, <u>Schedule A</u>.

7. <u>Guaranty of Payment</u>.  ONE-GO-EVENTS hereby unconditionally, absolutely and irrevocably guarantees to JAM, and its successors, endorsees, transferees and assigns, the full and prompt payment when due of the payments due to JAM under or in connection with <u>Sections 3</u>, <u>5</u> and <u>6</u> of this Agreement (the "<u>Payment Guaranty</u>").  This Payment Guaranty is a present and continuing guaranty of payment and not of collectability, and JAM shall not be required to prosecute collection, enforcement or other remedies against ONE-GO-EVENTS or to enforce or resort to any collateral for the repayment of the Payment Guaranty or other rights or remedies pertaining thereto, before calling on ONE-GO-EVENTS for payment.  ONE-GO-EVENTS hereby waives all presentments, demands for performance, notices of non-performance, protests, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional indebtedness, and demands and notices of every kind.

8. <u>Operations; Duties</u>.

    a. ONE-GO-EVENTS Role.  ONE-GO-EVENTS shall operate the Saint Petersburg Exhibition, including, but not limited to, setting up staffing, salaries, advertising and production.  ONE-GO-EVENTS will fund local operating expenses (e.g. staffing, salaries, etc.) and will submit the necessary supporting detail to JAM for periodic reimbursement.  ONE-GO-EVENTS must get the prior approval of JAM for any variance outside the business plan and budget attached hereto as <u>Schedule A</u>.  ONE-GO-EVENTS hereby agrees to operate the Saint Petersburg Exhibition in a commercially

responsible manner in accordance with the terms of this Agreement and as otherwise reasonably directed by JAM.

      b.    Premier Role.  JAM and ONE-GO-EVENTS acknowledge that the installation of the Saint Petersburg Exhibition is done by Premier, all in accordance with the terms of the business plan and budget attached hereto as Schedule A.

      8.    Books and Records.  Each party shall have the right to inspect the books and records of the other party solely in connection with the Saint Petersburg Exhibition. The party requesting such examination (the "Requesting Party") shall notify the other party (the "Audited Party") in writing, upon at least ten (10) days prior notice, and the Audited Party shall make their books and records available to the Requesting Party at such time as requested in the notice.  If the audit discloses an understatement in the net profits of the Audited Party by more than five percent (5%) than the Audited Party shall pay such difference to the Requesting Party and shall also pay to Requesting Party the costs and expenses of such audit.

      9.    Termination.  JAM shall have the right to terminate ONE-GO-EVENTS for Cause.  For purposes of this Agreement, the term "Cause" shall mean any of the following actions by ONE-GO-EVENTS:  (a) a failure to comply with any of the material terms of this Agreement, which shall not be cured within 10 days after written notice; (b) engagement in misconduct injurious to the Saint Petersburg Exhibition or any other Exhibition; (c) intentional misappropriation of property of the Saint Petersburg Exhibition or (d) the commission by ONE-GO-EVENTS of an act of fraud or embezzlement.  ONE-GO-EVENTS shall be entitled to no further compensation or other benefits under this Agreement subsequent to this termination.

      10.    Confidentiality.

      a.    At all times after the date hereof, ONE-GO-EVENTS shall not disclose or use any information concerning JAM, the Exhibition, the Saint Petersburg Exhibition or the Specimens including, but not limited to, business and financial conditions, services and clients, any proprietary or strategic information, marketing plans, strategies, results, information regarding the producing and promoting of the Exhibition, the processes involved in creating the Specimens or other confidential information divulged to or learned by ONE-GO-EVENTS about any of the foregoing from any source whatsoever ("JAM Confidential Information"), provided, that such obligation shall not apply to any JAM Confidential Information (i) to the extent that it legally is or becomes part of public or industry knowledge from authorized sources or (ii) which ONE-GO-EVENTS is required by law to disclose (but only to the extent required to be so disclosed). Within thirty (30) days of termination of this Agreement, ONE-GO-EVENTS shall immediately return to JAM or otherwise dispose of as JAM may direct all pamphlets, literature, contractual documentation, photographs, catalogues, advertising material, specifications, cost estimates and other materials, documents and papers whatsoever belonging to JAM and sent to ONE-GO-EVENTS relating to the Saint Petersburg Exhibition.

      b.    At all times after the date hereof, JAM shall not disclose or use any information concerning ONE-GO-EVENTS including, but not limited to, business and

financial conditions, services and clients, any proprietary or strategic information, marketing plans, strategies, results, or other confidential information regarding ONE-GO-EVENTS divulged to or learned by JAM from any source whatsoever ("ONE-GO-EVENTS Confidential Information"), provided, that such obligation shall not apply to any ONE-GO-EVENTS Confidential Information (i) to the extent that it legally is or becomes part of public or industry knowledge from authorized sources or (ii) which either of the parties is required by law to disclose (but only to the extent required to be so disclosed).

11.    Indemnification.

a.    ONE-GO-EVENTS agrees to indemnify, defend and hold harmless JAM, its subsidiaries, parent companies, affiliates, agents, and assigns and their respective agents, officers, employees, and directors, from and against any and all losses, damages, liabilities, claims, demands, suits and expenses that JAM may incur or be liable for as a result of any claim, suit or proceeding made or brought against JAM based upon, arising out of, or in connection with the Saint Petersburg Exhibition of ONE-GO-EVENTS' breach of any of its representations, duties or obligations hereunder.

b.    JAM agrees to indemnify, defend and hold harmless ONE-GO-EVENTS, its subsidiaries, parent companies, affiliates, agents, and assigns and their respective agents, officers, employees, and directors, from and against any and all losses, damages, liabilities, claims, demands, suits and expenses that ONE-GO-EVENTS may incur or be liable for as a result of any claim, suit or proceeding made or brought against ONE-GO-EVENTS based upon, arising out of, or in connection with JAM's breach of any of its representations, duties or obligations hereunder.

12.    Trademarks.  It is expressly agreed and understood that ONE-GO-EVENTS shall have no rights to any of the trademarks utilized for the Saint Petersburg Exhibition and the Saint Petersburg Exhibition logos.

13.    Non-Competition.  ONE-GO-EVENTS agrees that, during the term of the Saint Petersburg Exhibition, and for a period of one (1) year after the conclusion of the Saint Petersburg Exhibition, it will not, either directly or indirectly, engage in any other business relating to the presentation of an exhibition concerning Specimens, either as a producer, presenter, proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, advisor, or consultant.  It is the intention of this provision to preclude not only direct competition but also all forms of indirect competition, such as consultation for competitive businesses, or any assistance or transmittal of information of any kind or nature whatsoever which would be of any material assistance to a competitor.

14.    Notices.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be delivered either by personal delivery, by nationally recognized overnight courier or by certified or registered mail, return receipt requested, addressed to JAM or ONE-GO-EVENTS at the address set forth above or at such other address as the party affected shall have previously designated by written notice given to the Business and the other party in the manner hereinabove set forth. Notices shall be deemed given one (1) day after sent, if sent by overnight courier; when delivered and receipted for, if hand delivered; or when receipted for (or

upon the date of attempted delivery where delivery is refused or unclaimed) if sent by certified or registered mail.

15. <u>Representations and Warranties</u>.  Each of JAM and ONE-GO-EVENTS represent and warrant that neither the execution, delivery nor performance of this Agreement constitutes a breach or violation of any contract or agreement to which either is a party or by which either is in any manner bound.  Each of JAM and ONE-GO-EVENTS further represent and warrant that neither has any interests or obligations, nor will either acquire any interests or obligations, which conflict with or hamper either's ability to perform as required under this Agreement.

16. <u>Force Majeure</u>.  If due to acts of God, insurrection, fire, elements, national emergency, or any other similar cause outside of the reasonable control of either party to this Agreement ("<u>Force Majeure</u>") the Saint Petersburg Exhibition is cancelled, delayed or the performance of either party under the terms of this Agreement is made impossible, the parties agree that such cancellation, postponement or failure to perform shall not be considered a breach of this agreement.  In such event, however, the parties agree to use their best efforts to reschedule the Saint Petersburg Exhibition.

17. <u>Publicity</u>.  Each of the parties agree that no press announcement or press release in connection with this Agreement shall be made unless the other party hereto shall have given its written consent to such announcement (including the form and content thereof), which consent shall not be unreasonably withheld. The parties acknowledge that a press conference will be held (TBA) in Saint Petersburg.

18. <u>Severability</u>.  If any of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been included in this Agreement.  If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

19. <u>No Third-Party Beneficiaries</u>. None of the provisions of this Agreement shall be for the benefit of or enforceable by any third parties, including, without limitation, creditors of the Exhibition, JAM or ONE-GO-EVENTS.

20. <u>No Waiver</u>.  No failure by any party to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or of any covenant, agreement, term or condition. Any party to this Agreement by an instrument in writing may, but shall be under no obligation to, waive any of its rights or any conditions to its obligations hereunder, or any duty, obligation or covenant of any other party to this Agreement, but no waiver shall be effective unless in writing and signed by the party to this Agreement making such waiver. No waiver shall affect or alter the remainder of the terms of this Agreement but each and every covenant, agreement, term and condition hereof shall continue in full force and effect with respect to any other then existing or subsequent breach.

21. <u>Applicable Law; Jurisdiction</u>. ALL MATTERS IN CONNECTION WITH THE POWER, AUTHORITY AND RIGHTS OF THE PARTY'S AND ALL MATTERS PERTAINING TO THE OPERATION, CONSTRUCTION, INTERPRETATION OR ENFORCEMENT OF THIS AGREEMENT SHALL BE GOVERNED AND DETERMINED BY THE INTERNAL LAWS OF RUSSIA, AND ANY DISPUTES WHICH CANNOT BE RESOLVED AMICABLY SHALL BE EXCLUSIVELY SUBMITTED TO THE COMPETENT COURT IN SAINT PETERSBURG, RUSSIA.

22. <u>Successors and Assigns</u>. The rights and obligations of JAM under this Agreement shall inure to the benefit of, and shall be binding upon, any successors of JAM and may be assigned, by JAM without obtaining ONE-GO-EVENTS' prior consent to any person (i) which at the time controls JAM, (ii) which succeeds to substantially all of the assets of JAM or (iii) to any to be formed joint venture between CPI and JAM. Any assignee shall assume and agree in writing to be bound by all of the obligations of JAM under this Agreement. The performance of ONE-GO-EVENTS' services is personal and shall not be assignable or be required of anyone other than ONE-GO-EVENTS.

23. <u>Entire Agreement/Amendments</u>. This Agreement contains the entire understanding between the parties and supersedes all prior written and oral agreements between them. There are no representations, agreements, arrangements or understandings, oral or written, between the parties to this Agreement relating to the subject matter of this Agreement, which are not fully expressed herein. This Agreement may not be amended or modified except by written instrument executed by both JAM and ONE-GO-EVENTS.

24. <u>Relationship of the Parties</u>. Each party shall perform its duties hereunder as an independent contractor. For purposes of this Agreement, the parties shall be considered co-producers of the Saint Petersburg Exhibition. This Agreement shall not be a license agreement or royalty agreement and all fees paid to JAM under this Agreement are deemed to be fees for the goods and/or services it provides. Neither party shall be or be deemed to be, or hold itself out as being, an agent of the other, and neither party shall be able to bind the other to any agreement with any third party, nor represent to third parties that they have the power to act as agent of the other, except as required to perform its duties pursuant to this Agreement. Nothing herein shall be implied to mean that the parties are agent, partner or joint venturer of the other party.

25. <u>Counterparts</u>. This agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute but one and the same document. Signature by facsimile is hereby authorized.

    IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

        JAM Exhibitions, LLC

        By: _____
           Name:
           Title:

        One-Go-Events Benelux BV

        By: _____
           Name:
           Title:

## SCHEDULE A

BUSINESS PLAN AND BUDGET