UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ONE-GO-EVENTS BENELUX BV,                          **ECF CASE**

                            Plaintiff,

         - against -                               07 Civ. 8185 (PKL)

JAM EXHIBITIONS, LLC,

                            Defendant.
-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND IN
SUPPORT OF PLAINTIFF'S CROSS-MOTION TO
AMEND ITS COMPLAINT**

Of Counsel:                        **Lyons & Flood, LLP**
                                   Attorneys for Plaintiff
                                   ONE-GO-EVENTS BENELUX BV
Kirk M. Lyons                      65 W. 36th Street, 7th Floor
Jon Werner                         New York, NY 10018
                                   (212) 594-2400

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................ii

Preliminary Statement........................................................................................ 1

ARGUMENT ........................................................................................................ 1

POINT I        THE ALLEGATIONS IN PLAINTIFF'S COMPLAINT
ARE SUFFICIENT TO STATE A CAUSE OF ACTION
AGAINST JAM ......................................................................... 1

POINT II      THE FINAL AGREEMENT IS AN ENFORCEABLE
CONTRACT ............................................................................. 4

        a.     The parties intended to be bound by the unexecuted
Final Agreement....................................................................... 5

        b.     There is ample evidence that JAM accepted One-
Go-Events' performance ........................................................... 9

        c.     There were no open terms left to negotiate........................... 11

        d.     The failure to execute the Final Agreement was not
unusual in the custom of the industry ................................... 12

POINT III     THE FINAL AGREEMENT DOES NOT VIOLATE THE
STATUTE OF FRAUDS .................................................................. 13

POINT IV     ONE-GO-EVENTS' UNJUST ENRICHMENT CLAIM IS
NOT BARRED BY THE STATUTE OF FRAUDS ....................... 16

POINT V      IN THE INTEREST OF JUSTICE, THE COURT
SHOULD ALLOW PLAINTIFF TO AMEND ITS
COMPLAINT ......................................................................... 17

POINT VI     PLAINTIFF'S COMPLAINT SHOULD NOT BE
DISMISSED ON THE GROUNDS OF IMPROPER
VENUE .................................................................................. 19

CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

Bdo Seidman v. Hirshberg, 93 N.Y.2d 382, 712 N.E.2d 1220; 690 N.Y.S.2d 854 (N.Y. 1999) ................................................................................................................. 16

Block v. First Blood Assocs., 988 F.2d 344 (2nd Cir. 1993) .......................................... 20

Cary Oil Co. v. MG Ref. & Mktg., 257 F. Supp. 2d 768 (S.D.N.Y. 2003) ................... 16

Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2nd Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992) ........................................ 20

Foman v. Davis, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ......................... 20

Jaghory v. New York Dep't of Educ., 131 F.3d 326 (2nd Cir. 1997) ............................... 3

Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC, 186 F.3d 135 (2nd Cir. 1999) ...................................................................................... 17

Min Jin v. Metro. Life Ins. Co., 310 F.3d 84 (2nd Cir. 2002) ....................................... 20

Mobile Data Shred, Inc. v. United Bank of Switz., 2000 U.S. Dist. LEXIS 4252 (S.D.N.Y. 2000) ........................................................................................................... 17

Mun. Capital Appreciation Partners I, L.P., v. Page, 181 F. Supp. 2d 379 (S.D.N.Y. 2002)....... 16

New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101 (2nd Cir. 2006) ........ 18

P.A. Bergner & Co. v. Martinez, 823 F. Supp. 151 (S.D.N.Y. 1993) ........................... 13

R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69 (2nd Cir. 1984)........................... 5, 6, 7, 11

Rothman v. Gregor, 220 F.3d 81 (2nd Cir. 2000) ............................................................ 3

V'Soske v. Barwick, 404 F.2d 495 (2nd Cir. 1968), cert. denied, 394 U.S. 921 (1969) .............. 13

Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2nd Cir. 1985) ....................... 5

Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490 (S.D.N.Y. 2002) .......................... 2, 3

**Statutes**

N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2003) ............................................... 15, 19

**Rules**

Federal Rule of Civil Procedure 15(a)(2) ................................................................ 1, 20

**Preliminary Statement**

This Memorandum of Law is submitted in opposition to defendant JAM EXHIBITIONS,

LLC's ("JAM") motion to dismiss the Complaint and in support of plaintiff ONE-GO-EVENTS

BENELUX BV's ("One-Go-Events") cross-motion to amend its Complaint pursuant to Rule

15(a)(2) of the Federal Rules of Civil Procedure ("FRCivP").

The facts in support of the motion are set forth in the accompanying Affirmation of Jon

Werner dated December 20, 2007 ("Werner Aff."), the Affirmation of Paul Koster dated

December 12, 2007 ("Koster Aff."), and Exhibits attached thereto, to which the Court is

respectfully referred.

**ARGUMENT**

**POINT I**

**THE ALLEGATIONS IN PLAINTIFF'S
COMPLAINT ARE SUFFICIENT TO STATE A
CAUSE OF ACTION AGAINST JAM**

Defendant JAM's motion to dismiss the Complaint is predicated on three arguments.

JAM's first argument is that One-Go-Events' Complaint fails to state a cause of action for

breach of contract against JAM because the Complaint fails to sufficiently allege the material

terms of the contract at issue, or the specific provision upon which JAM's liability is predicated.

 (See JAM's Memorandum of Law at p. 4).  Accordingly, JAM contends that One-Go-Events'

Complaint should be dismissed pursuant to FRCivP 12(b)(6).

In support of this argument, JAM analyzes One-Go-Events' Complaint and provides its

own paraphrased interpretation of the allegations set forth in the Complaint.  Notably, JAM

summarized the allegations contained in paragraph 16 of the Complaint as follows: "Jam

informed One-Go that the exhibition would not open and that Jam would not be providing the Bodies Exhibit to One-Go." (See JAM's Memorandum of Law at p. 5).

However, paragraph 16 of the Complaint actually provides that: "On or about April 12, 2007, JAM informed ONE-GO-EVENTS that the Saint Petersburg Exhibit would not be opening at the appointed time under the Agreement and that JAM would not be providing the Bodies Exhibit to ONE-GO-EVENTS as agreed." (See Exhibit A to the Werner Aff. at ¶ 16) (emphasis added).

The Complaint goes on to allege that JAM's "failure to perform its responsibilities under the Agreement constituted a material breach of the Agreement" and that "[a]s a direct and proximate result of defendant's material breach of contract, plaintiff ONE-GO-EVENTS suffered and will continue to suffer pecuniary losses and damages." (See Exhibit A to the Werner Aff. at ¶¶ 17-18).

It is clear from these allegations that JAM had agreed to provide the "Bodies Exhibit" to One-Go-Events on a specific date and had breached this obligation by failing to provide the "Bodies Exhibit," causing One-Go-Events to suffer losses and damages.

Thus, One-Go-Events has sufficiently specified the obligations upon which JAM's liability is predicated, viz., its agreement to provide the "Bodies Exhibit" to One-Go-Events on a specific date. Having failed to do so, JAM has breached the contract.

"When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded factual allegations of the complaint, and draw all reasonable inferences in favor of the plaintiff." Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) (citing Jaghory v. New York Dep't of Educ., 131 F.3d 326, 329 (2nd Cir. 1997)).

Moreover, as JAM itself has noted, "[f]or the purposes of a motion to dismiss, a complaint is deemed to include any written document attached as an exhibit, any statements or documents incorporated in the complaint by reference and any documents that the plaintiff may have relied on in bringing the action." (See JAM's Memorandum of Law at p. 3 (citing Rothman v. Gregor, 220 F.3d 81, 88-89 (2nd Cir. 2000) (emphasis added)); see also Wolff, supra, 210 F. Supp. 2d at 494 ("When reviewing a motion to dismiss, a court may consider documents attached to the pleadings, as well as documents outside the pleadings 'that are integral or relied upon by the plaintiff in preparing the pleadings.'")

In his Affirmation submitted in opposition to defendant's motion to dismiss, Paul Koster, President of One-Go-Events, has set forth at great length the documents upon which One-Go-Events relied in preparing the Complaint. Collectively these documents cure any defects, real or perceived, that may exist in plaintiff's Complaint. Specifically, included among the over 100 pages of exhibits provided in, and referenced by, Mr. Koster's Affirmation is the Co-Promoter Agreement and business plan incorporated by reference, which make up the contract upon which One-Go-Events' breach of contract cause of action is predicated. (See Koster Aff. at Exhibits D and I).

Thus, to the extent that JAM asserts that the Complaint fails to set forth the specific material terms of the contract upon which One-Go-Events' claims depend, this argument is negated by the inclusion in Mr. Koster's Affirmation of the above-referenced exhibits.

## POINT II

### THE FINAL AGREEMENT IS AN
### ENFORCEABLE CONTRACT

JAM's second argument is that One-Go-Events' cause of action for breach of contract must fail because it is predicated on an unenforceable agreement.  In support of this claim, JAM submitted a "Draft Agreement" which it contended was an indicator that "the parties never got beyond the drafting stage of a proposed agreement and there were still material terms left to negotiate."  (See JAM's Memorandum of Law at p. 6).

As Mr. Koster makes clear in his Affirmation, the "Draft Agreement" relied upon by JAM, was in fact the final version of the Co-Promoter Agreement exchanged between the parties and was thus, the final agreement between the parties.  A copy of the "Final Agreement" is attached as Exhibit I to the Koster Affirmation.

The Final Agreement is an enforceable contract and fully supports its breach of contract claim.  As JAM correctly observed, the intent of the parties is the critical determinant of whether an unexecuted agreement will be enforceable, and courts will typically look to the following four factors in order to determine the parties' intent: (1) whether the parties expressly reserved their rights not to be bound without a formal written contract; (2) whether a party partially performed under the contract and such performance was accepted by the other party; (3) whether the parties agreed upon all the terms of the contract; and (4) whether the alleged agreement is the type of contract that is usually committed to writing.  (See JAM's Memorandum of Law at pp. 6-7) (citing R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 74 (2nd Cir. 1984)); see also Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2nd Cir. 1985).

The Second Circuit also has noted of these factors that "[n]o single factor is decisive, but each provides significant guidance."  R.G. Group, Inc., supra, 751 F.2d at 75.

a.    **The parties intended to be bound by the
          <u>unexecuted Final Agreement</u>**

With respect to this factor, JAM contends that the language used in the Final Agreement

reflects an intent not to be bound until a written contract was duly executed.  In support of its

argument JAM observed that ¶3 of the Final Agreement conditions One-Go-Events' payment

obligation "[u]pon execution of this Agreement" and observed that the last page of the Final

Agreement contains blank signature lines and the statement "the parties hereto have executed

this Agreement as of the day and year first written above."  (See JAM's Memorandum of Law at

p. 7).

JAM also asserts that the existence of a merger clause at ¶23 of the Final Agreement is

further evidence of an intent not to be bound prior to execution of a written agreement.  (See

JAM's Memorandum of Law at p. 7).

However, aside from these excerpts from the Final Agreement, JAM has not produced

any other evidence of the parties' intent regarding the Final Agreement.

In <u>R.G. Group, Inc.</u>, <u>supra</u>, 751 F.2d at 74, the Second Circuit set forth the standard

governing enforceability of unexecuted agreements, noting that "if the parties do not intend to be

bound by an agreement until it is in writing and signed, then there is no contract until that event

occurs… On the other hand, where there is no understanding that an agreement should not be

binding until reduced to writing and formally executed, and 'where all the substantial terms of a

contract have been agreed on, and there is nothing left for future settlement,' then an informal

agreement can be binding even though the parties contemplate memorializing their contract in a

formal document."

Moreover, the Second Circuit stated that the "[w]hat matters are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances." Id.

At the outset, it should be noted that One-Go-Events denies JAM's interpretation of these provisions in the Final Agreement. Although ¶3 does seem to condition One-Go-Events' payment obligations upon execution of the Final Agreement, that is only one of a number of obligations which the Final Agreement describes, the rest of which are not similarly conditioned. Moreover, it is notable that there are no such conditions made with respect to JAM's performance under the Final Agreement. Thus, standing alone, ¶3 does not clearly indicate a mutual intent not the bound by the Final Agreement in its entirety prior to execution.

Further, the fact that the Final Agreement contains blank signature lines and an accompanying statement to the effect that by signing the parties have executed the Final Agreement, is poor evidence at best of the intent of the parties. If anything it merely presages that the parties would execute the Final Agreement at some future date, but does not express anything with regard to the intent of the parties prior to execution.

Since, as noted above, the only other reference in the Final Agreement to execution, is in ¶3 with respect to One-Go-Events' obligation to make a guarantee payment to JAM, the logical interpretation of that language and the language accompanying the signature lines, is that the parties did not intend One-Go-Events' guarantee payment to be triggered until the Final Agreement had been fully executed. With respect to the other obligations contained in the Final Agreement there are no such reservations, and thus, no assumptions can be drawn from the Final Agreement regarding the intent of the parties as to these other obligations. This interpretation is

in accord with the actual dealings of the parties, and is thus, the only logically consistent interpretation.

Mr. Koster, in his Affirmation, and in the exhibits attached thereto, has presented ample evidence of the intent of the parties at various points throughout their business relationship. Nowhere in the over 100 pages of exhibits attached to Mr. Koster's Affirmation do either of the parties express an intention not to be bound. Quite to the contrary, in numerous e-mails, Paco Zimmer, President of JAM, and other representatives of JAM, indicate a definite intent to be bound by the Final Agreement.

For example, even prior to the preparation of the Final Agreement, JAM advised One-Go-Events that "BODIES The Exhibition is confirmed for St Petersburg, RU, Erasia for May 26 2007 opening through Oct 28 2007." (See Koster Aff. at ¶ 15). Further, prior to the drafting of a formal contract, One-Go-Events expended considerable effort on behalf of JAM, in scouting venues, conducting market research, and discussing the project with JAM. (See Koster Aff. at ¶¶ 11 and 12). One-Go-Events even contracted with a third-party (at JAM's behest) prior to the drafting of a formal contract. (See Koster Aff. at ¶ 19).

Similarly, JAM's dealings with One-Go-Events after the Final Agreement had been prepared and provided to One-Go-Events indicate a definite intent to be bound. Soon after representatives of the two companies met in Amsterdam, JAM provided One-Go-Events with the Final Agreement and began to direct One-Go-Events' performance of its obligations under the contract. Specifically, representatives of JAM and Premier Exhibitions, Inc. ("Premier"), JAM's partner in the venture at issue, liaised with representatives of One-Go-Events regarding the preparation and localization of marketing materials and the design of the exhibition space. (See Koster Aff. at ¶ 18).

The circumstances surrounding JAM's breach of its obligations also reflect that both parties considered themselves contractually bound. The fact that Mr. Zimmer felt the need to inform One-Go-Events of the delays in the opening of the exhibit and sought One-Go-Events' input and consent with regard to JAM's handling of these delays, is itself an indicator that JAM believed it was bound to One-Go-Events. (See Koster Aff. at ¶ 24).

Despite the initial delay, both JAM and One-Go-Events proceeded to perform their respective obligations under the Final Agreement. (See Koster Aff. at ¶ 25). In the process, One-Go-Events incurred in excess of €440,000.00 in expenses in connection with the work done presenting and marketing the Bodies Exhibit. (See Koster Aff. at ¶ 36). Similarly, JAM incurred expenses and devoted significant resources of its own towards the project. (See Koster Aff. at ¶ 28). This continued performance, with full knowledge of the parties, is crystal clear evidence that the parties considered themselves contractually bound. It is nonsensical to suggest that sophisticated parties would expend hundreds of thousands of euros in support of a project, without any expectation or belief that the parties were contractually bound.

As further delays occurred and it became clear that the exhibit was in trouble, Mr. Zimmer even advised One-Go-Events not to make the $100,000.00 guarantee payment it owed to JAM. (See Koster Aff. at ¶ 32). Had JAM truly not considered itself or One-Go-Events bound by the Final Agreement, such an instruction would have been wholly superfluous, as no performance would have been required on either party's part. Moreover, this instruction by Mr. Zimmer undermines JAM's contention that the language used in ¶3 of the Final Agreement (conditioning One-Go-Events' payment obligation "[u]pon execution of this Agreement") evidences an intent not to be bound absent execution.

This was not the only post-breach communication by Mr. Zimmer showing that JAM considered itself bound by the Final Agreement. Following JAM's failure to deliver the specimens for the Bodies Exhibit as promised, JAM and One-Go-Events entered into settlement negotiations, resulting in an offer by JAM to pay One-Go-Events €450,000.00. (See Koster Aff. at ¶ 37).

Although JAM never paid the settlement, Mr. Zimmer made a number of subsequent reassurances that JAM would settle with One-Go-Events soon, even going so far as to say: "The bottom line is you will be reimbursed. There are no excuses." (See Koster Aff. at ¶ 39). These settlement negotiations and promises to pay, are clear, undeniable evidence that JAM considered itself contractually bound to One-Go-Events.

In light of the above, any evidence of an intent not to be bound absent a writing which JAM suggests is present in the Final Agreement (and whose interpretation One-Go-Events denies vehemently), is dwarfed by, and rendered wholly insignificant by, the mountain of evidence of the parties' actual intent as measured by their actual dealings with respect to the project.

Plaintiff One-Go-Events respectfully submits that JAM has failed to establish that there was an understanding between the parties that the Final Agreement would not be binding until reduced to a writing and formally executed.

**b.    There is ample evidence that JAM
         <u>accepted One-Go-Events' performance</u>**

In further support of its argument that One-Go-Events' cause of action for breach of contract must fail because it is predicated on an unenforceable agreement, JAM calls into question whether JAM ever accepted the performance tendered by One-Go-Events. Notably, JAM does not actually argue that it did not accept One-Go-Events' performance. Rather JAM

merely points out that One-Go-Events' Complaint does not allege that JAM accepted the performance.

JAM further observes that under ¶4 of the Final Agreement, One-Go-Events' performance was subject to JAM's direction and approval, and argues that One-Go-Events' failure to plead that JAM directed and approved its performance is further evidence of the unenforceability of the Final Agreement.  (See JAM's Memorandum of Law at pp. 8-9).  By making this argument, JAM appears to be saying that One-Go-Events' failure to allege that it did not breach ¶4 of the Final Agreement is itself supportive of the fact that the Final Agreement is unenforceable.  This argument is circuitous and paradoxical, since if the Final Agreement were unenforceable (as claimed by JAM), then it is nonsensical for JAM to rely upon an alleged breach of the Final Agreement in support of its claim of unenforceability.

The Second Circuit has clearly stated that "partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect."  R.G. Group, Inc., supra, 751 F.2d at 75.

As discussed above and in Mr. Koster's Affirmation, there is ample evidence of JAM's awareness of, and acceptance of, One-Go-Events' performance of its obligations under the Final Agreement.  In the interest of brevity, this evidence will not be exhaustively recounted again. One need only read Mr. Koster's Affirmation.  Plaintiff One-Go-Events respectfully submits that this overwhelming evidence of JAM's acceptance of One-Go-Events' performance, should alone be dispositive of the issue of whether the parties understood there was an enforceable contract.

Moreover, to the extent necessary, One-Go-Events respectfully moves for leave to amend its Complaint with respect to the acceptance of performance by JAM, as set forth in more detail in POINT V below.

c.    <u>**There were no open terms left to negotiate**</u>

With respect to the third factor of the test for determining the parties intent to be bound by an unexecuted writing, JAM argues that the Final Agreement did not include all the material terms of the agreement between the parties, and that therefore, the Final Agreement was unenforceable.  Specifically, JAM observed that the Final Agreement contains references to a "business plan and budget" attached as Schedule A to the Final Agreement, and posits that the "business plan and budget" was not included in the Final Agreement, concluding that the lack of inclusion of the "business plan and budget" is "strong evidence that the [Final] Agreement was not complete, did not contain all the material terms and that the parties did not intend to be bound by its terms prior to final agreement and execution."  (See JAM's Memorandum of Law at pp. 9-10).

Later on in its Memorandum of Law, JAM makes reference to "a yet un-drafted business plan and budget."  (See JAM's Memorandum of Law at p. 11).  Thus, it appears that counsel for JAM is laboring under the belief that the business plan and budget remained undrafted at the time the Final Agreement was prepared, and that therefore, there remained material terms open to negotiate.

In point of fact, however, the business plan and budget referenced by the Final Agreement was a document that was prepared by JAM and provided to One-Go-Events on March 9, 2007 – long before the Final Agreement were prepared in late March and early April 2007.  (See Koster Aff. at ¶¶ 13, 14 and 17).  Thus, the business plan and budget were properly incorporated by reference into the Final Agreement and none of the terms contained therein were left open for negotiation.

Accordingly, there is no support for JAM's assertion that there remained open material terms to negotiate between the parties.

Moreover, the Second Circuit has held that "all the terms contemplated by the agreement need not be fixed with complete and perfect certainty for the contract to have legal efficacy." V'Soske v. Barwick, 404 F.2d 495, 500 (2nd Cir. 1968), cert. denied, 394 U.S. 921 (1969).

Thus, even if this Court does not find that the business plan and budget were in a sufficiently complete form, or finds fault with the manner of their incorporation into the Final Agreement, plaintiff One-Go-Events respectfully submits that the terms contemplated were nevertheless sufficiently fixed to render the agreement enforceable.

**d.     The failure to execute the Final Agreement was not
        <u>unusual in the custom of the industry</u>**

With regard to the fourth factor of the test to determine the enforceability of an unexecuted writing, JAM posited that the Final Agreement was the type of agreement which would usually be in put into an executed writing.

JAM correctly stated the law when it quoted the decision published at <u>P.A. Bergner & Co. v. Martinez</u>, 823 F. Supp. 151, 158 (S.D.N.Y. 1993), for the effect that "[i]n the absence of custom, courts will assume that a transaction of sufficient substance or complexity will usually require a writing." (See JAM's Memorandum of Law at p. 10).

The only evidence JAM submitted in support of its assertion that the Final Agreement was the type of agreement which would usually be put into an executed writing is the fact that the Final Agreement itself was prepared, that the Final Agreement called for One-Go-Events to pay $100,000.00 upon execution to JAM, and further "contains complex profit and loss formulas…." (See JAM's Memorandum of Law at p. 11). Presumably, JAM is arguing that the $100,000 payment and the use of profit and loss calculations are alone sufficient to establish that

the Final Agreement was of such scale and complexity that it would have been the norm for such an agreement to be reduced to an executed writing.

Here, however, there is evidence that the custom in the industry and between the parties was that final execution of a writing would not take place until just before the opening of the exhibition.

Specifically, Mr. Koster stated in his Affirmation that this was the custom in his industry, and this is further supported by the fact that Mr. Zimmer told Mr. Koster not to execute the agreement and make the $100,000.00 guarantee payment when it was determined that the exhibition would not be opening. (See Koster Aff. at ¶¶ 22 and 32).

Thus, for all the foregoing reasons, plaintiff One-Go-Events respectfully submits that the written agreement between the parties was fully enforceable despite the fact that it was not executed.

## POINT III

### THE FINAL AGREEMENT DOES NOT
### VIOLATE THE STATUTE OF FRAUDS

JAM next argues that even if the Final Agreement were enforceable, One-Go-Events' breach of contract cause of action must be dismissed because the Final Agreement violates the Statute of Frauds.

Specifically, JAM relies upon New York's Statute of Frauds, which provides in relevant part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> 1. By its terms is not to be performed within one year from the making thereof ….

-13-

N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2003).

JAM acknowledges that the Final Agreement calls for a term of performance of only seven months, but also observes that the Final Agreement contains a non-compete clause with a one-year term beginning at the conclusion of the exhibition.  (See JAM's Memorandum of Law at p. 12).

JAM thus argues that although the remainder of the Final Agreement may be performed within one year, the fact that the non-compete clause has an effective duration of longer than one year (since it commences after the close of the exhibition), causes the Final Agreement to be barred in its entirety by New York's statute of frauds.

This argument is fatally flawed.  It ignores the presence of ¶18 of the Final Agreement, which is entitled "Severability" and provides in relevant part that "[i]f any of the provisions of this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been included in this Agreement."  (See Exhibit F and I to Koster Aff. at ¶ 18).

By operation of this severability clause, any potential unenforceability of the non-compete clause will not affect the enforceability of the remainder of the Final Agreement.  See, e.g., Cary Oil Co. v. MG Ref. & Mktg., 257 F. Supp. 2d 768, 772-73 (S.D.N.Y. 2003) (noting that "in determining whether a contract is severable or entire, 'the primary factor to consider is the intent of the parties as determined by a fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances existing at the time of contracting.'") (quoting Mun. Capital Appreciation Partners I, L.P., v. Page, 181 F.

Supp. 2d 379, 384 (S.D.N.Y. 2002); see also Bdo Seidman v. Hirshberg, 93 N.Y.2d 382, 393,

712 N.E.2d 1220; 690 N.Y.S.2d 854 (N.Y. 1999) (holding that New York courts have the

inherent judicial power to sever and grant partial performance of restrictive covenants).

Thus, only the non-compete clause would be unenforceable under the Statute of Frauds.

The remainder of the Final Agreement would be enforceable.

Moreover, it is well-settled that "[p]artial performance by a party may take an oral

agreement out of the Statute of Frauds if the party's actions are 'unequivocally referable' to the

agreement." Mobile Data Shred, Inc. v. United Bank of Switz., 2000 U.S. Dist. LEXIS 4252, at

*9 (S.D.N.Y. 2000).

This equitable doctrine can be established by demonstrating that the parties' actions can

only be reasonably explained only by reference to the agreement. See, e.g., Messner Vetere

Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC, 186 F.3d 135, 136 (2nd Cir.

1999).

All of the actions taken by the parties, as discussed in POINT II(a) above, are only

explainable in the context of the Final Agreement. Simply put, it is nonsensical to suggest that

sophisticated parties would expend hundreds of thousands of euros in support of a project,

without any expectation or belief that the parties were contractually bound.

As noted above, the burden is on the party moving to dismiss to establish entitlement to

that relief. Defendant JAM has failed to establish why New York's Statute of Frauds should

apply to the Final Agreement and has also failed to establish why the severability clause in those

agreements should not preserve the enforceability of the remainder of the agreements aside from

the non-compete clause.

## POINT IV

### ONE-GO-EVENTS' UNJUST ENRICHMENT CLAIM IS NOT BARRED BY THE STATUTE OF FRAUDS

JAM also argues that One-Go-Events' claim for unjust enrichment should be dismissed as barred by the Statute of Frauds.  This argument is only applicable in very limited context; specifically to a situation where this Court finds that the Final Agreement is enforceable despite not having been fully executed, and also finds that the Statute of Frauds bars enforceability of the entire agreement (rather than just the non-compete clause).

This is so because, in the event that this Court finds that the Final Agreement is enforceable in whole or in part, the grounds for dismissing One-Go-Events' unjust enrichment claim will have already been laid.  A claim for unjust enrichment is a quasi-contract form of relief, and is thus incompatible with the existence of an enforceable contract between the parties. See, e.g., New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 118 (2nd Cir. 2006) ("[W]here a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available.")  It would thus be entirely superfluous to further argue that an unjust enrichment claim violated the Statute of Frauds.

By contrast, were this Court to find that the Final Agreement is unenforceable by dint of the failure to fully execute the agreement, this Court would have to examine the sufficiency of One-Go-Events' alternative claim of unjust enrichment.  In that situation however, plaintiff respectfully submits that this Court would have had to find that the parties had not intended to be bound by the Final Agreement prior to full execution, and thus, there would not have been any non-compete clause to violate the Statute of Frauds.

To put it another way: it is a logical impossibility for a claim of unjust enrichment to be barred by the Statute of Frauds, as the Statute of Frauds only operates by definition upon an

"agreement, promise or undertaking" (see N.Y. Gen. Oblig. Law § 5-701(a) (McKinney 2003)), and a claim of unjust enrichment would be void where there had been an agreement, promise or undertaking (since it would then really be a claim of promissory estoppel or breach of contract).

Thus, One-Go-Events' unjust enrichment claim will be affected by the Statute of Frauds only if this Court finds that the Final Agreement is enforceable despite not having been fully executed, and also finds that the Statute of Frauds bars enforceability of the entire agreement. As One-Go-Events has argued above, New York's Statute of Frauds should not be applied to the Final Agreement and, in any event, even if it applied, due to operation of the severability clause in those agreements, the Statute of Frauds would, at most, only render the non-compete clause of those agreements unenforceable.

Accordingly, plaintiff One-Go-Events respectfully submits that its alternative claim of unjust enrichment should not be dismissed.

<u>**POINT V**</u>

**IN THE INTEREST OF JUSTICE, THE
COURT SHOULD ALLOW PLAINTIFF TO
<u>AMEND ITS COMPLAINT</u>**

Finally, to the extent it is required, plaintiff One-Go-Events seeks leave of this Court to amend its Complaint pursuant to FRCivP 15(a)(2) in the event that this Court finds that plaintiff's Complaint has failed to state a claim. Plaintiff's proposed Amended Complaint is contained in Exhibit B to the Werner Affirmation.

FRCivP 15(a)(2) provides in pertinent part that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The United States Supreme Court and the Second Circuit have held that a plaintiff should be granted leave to replead, absent a showing of undue delay, bad faith, or dilatory motives on the part of the movant, undue prejudice to the opposing party, or the futility of the amendment. See, e.g., Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222, 226 (1962); Min Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2nd Cir. 2002); Block v. First Blood Assocs., 988 F.2d 344, 350 (2nd Cir. 1993). Thus, it is not surprising that the Second Circuit has also observed that "it is the usual practice upon granting a motion to dismiss to allow leave to replead." Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2nd Cir. 1991), cert. denied, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992).

The parties have not served initial disclosures and no discovery has been served or produced. Thus, the litigation is at its very earliest stages and no undue delay will result. As the Affirmation of Mr. Koster shows, plaintiff's claim has not been made in bad faith or for dilatory motives. Moreover, defendant cannot possibly be prejudiced by any amendment since it was defendant's motion to dismiss that was the genesis of the request for leave to amend the Complaint.

In addition, as discussed above, plaintiff has a valid cause of action against defendant for breach of contract.

Finally, plaintiff seeks to assert a new cause of action against defendant for breach of the settlement agreement entered into between JAM and One-Go-Events. (See Koster Aff. at ¶¶ 37-39 and Count III of the proposed Amended Complaint).

## POINT VI

## PLAINTIFF'S COMPLAINT SHOULD NOT BE DISMISSED
## ON THE GROUNDS OF IMPROPER VENUE

Defendant's final argument relates to the enforceability of the law and jurisdiction clause in the Final Agreement (paragraph 21).

Specifically, defendant argues that the clause provides for all disputes arising out of the Final Agreement to be resolved in The Netherlands and thus, contends that One-Go-Events' Complaint should be dismissed pursuant to FRCivP 12(b)(3) on the grounds of improper venue. (See JAM's Memorandum of Law at p. 14).

Plaintiff's proposed cause of action for breach of the settlement agreement between JAM and One-Go-Events is unaffected by this argument, as it is not governed by the operation of the law and jurisdiction clause.

Thus, even in the event that the first and second count of plaintiff's Complaint are dismissed, plaintiff respectfully submits that its third count found in the proposed Amended Complaint should not be dismissed.

## CONCLUSION

Plaintiff One-Go-Events respectfully requests the Court to enter an Order denying defendant's motion to dismiss in its entirety, granting plaintiff's cross-motion to amend the Complaint, and granting plaintiff such other and further relief as the Court sees fit herein.

Dated: December 20, 2007

                                      LYONS & FLOOD, LLP
                                        Attorneys for Plaintiff
                                        ONE-GO-EVENTS BENELUX BV.

By: _____

                Kirk M. Lyons (KL-1568)
                65 West 36th Street, 7th Floor
                New York, New York 10018
                (212) 594-2400

By: _____

                Jon Werner (JW-5000)
                65 West 36th Street, 7th Floor
                New York, New York 10018
                (212) 594-2400

U:\kmhldocs\2641002\Motions\MOL-Opp-dismiss.doc

## CERTIFICATE OF SERVICE

Jon Werner, an attorney duly admitted to practice before this Honorable Court, affirms on this 20th day of December 2007, I served true copies of the foregoing, by U.S. Mail, first-class postage pre-paid, and by e-mail to:

> DLA Piper US LLP (NY)
> Attorneys for Defendant JAM EXHIBITIONS, LLC
> 1251 Avenue of the Americas
> New York, NY 10020
>
> Attn:   Megan A. Shea Harwick
>         megan.shea@dlapiper.com

_____
Jon Werner

U:\kmhldocs\2641002\Motions\MOL-Opp-dismiss.doc